**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TODD PARIS, ) | |
| ID # 559445, ) | |
|     Plaintiff, ) | |
| vs. ) | No. 3:12-CV-0296-G-BH |
| ) | |
| DALLAS POLICE DEPARTMENT, et al., ) | |
|     Defendants. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this action has been automatically referred for pretrial management. Based on the relevant filings and applicable law, only the plaintiff's excessive force claims against the officers in their individual capacities should be allowed to proceed, and all remaining claims should be **DISMISSED**.

**I. BACKGROUND**

On or about January 30, 2012, Todd Paris (Plaintiff) filed suit under 42 U.S.C. § 1983 against the Dallas Police Department (DPD) and DPD Officers Tony Jay Buchanan (Buchanan) and Scott Daniel Bayton (Bayton) in both their individual and official capacities, alleging racial profiling and excessive force during an arrest. (Compl. at 2, 6). On March 19, 2012, Plaintiff added the City of Dallas as a defendant (City). (Magistrate Judge's Questionnaire (MJQ) Ans. 1).[1] He claims that on June 19, 2010, he was walking across an intersection after leaving a fast food restaurant. (Compl. at 4-5). The officers stopped him, and directed him to place his hand on the squad car. *Id.* at 5. When he asked why he was being stopped, Buchanan told him that it was for jay-walking. Plaintiff claims that after he complied, the officers struck him with their metal flashlights and their fists and

---

[1] Answers to the questions posed by the Court constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

kicked him when he fell to the ground. Buchanan then rammed his flashlight into Plaintiff's mouth, breaking some of his teeth. While placing handcuffs on the plaintiff, the officers twisted his arms to the extent that they broke his left wrist. They also continued to beat and kick him, causing head trauma. Plaintiff was taken to the hospital for emergency medical treatment. He claims that the officers then filed a false police report stating that they stopped him for jaywalking, that he tried to flee, and that he possessed an unknown white rock-like substance. *Id.*

Plaintiff claims that the officers violated his constitutional rights by using excessive force during his arrest, and that the City and DPD have a custom and practice of using violent search tactics when searching people suspected of possessing drugs that is caused by a failure to properly train officers. He also contends that the officers racially profiled him by stopping him and using excessive force while searching him for drugs, and that the City and DPD have a custom and practice of stopping African-Americans and using excessive force while searching their mouths for drugs. (Compl. at 3-6; MJQ Ans. 4). Finally, Plaintiff asserts that the officers took valuable coins from him during his arrest that were never returned. (MJQ Ans. 9). He seeks monetary damages and declaratory relief. (Compl. at 4, 6; MJQ Ans. 10).

## II. PRELIMINARY SCREENING

Plaintiff is an inmate in the Texas prison system who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is

frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III. SECTION 1983

Plaintiff sues under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.    Dallas Police Department**

Plaintiff first sues DPD. (Comp. at 3; MJQ Ans. 1). A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit

3

steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313.  A city police department is not a jural entity subject to suit.  *See*, *e.g.*, *Williams v. City of Dallas Police Dep't*, No. 3:09-CV-0275-P, 2009 WL 812239, at *2 (N.D. Tex. Mar. 26, 2009) (accepting recommendation of Mag. J.); *Edwards v. Dallas County Jail Med. Dep't*, No. 3:07-CV-0886-G, 2007 WL 2687615, at *2 (N.D. Tex. Sept. 13, 2007).[2]  All claims against DPD should therefore be dismissed.

**B.   The City of Dallas**

Plaintiff sues the City, alleging that it has a custom and practice of allowing police officers to use excessive force to search and dislodge objects from the mouths of suspects by using flashlights, handcuffs, and other metal objects to force open suspects' mouths, that the excessive force used against him in searching his mouth was the moving force behind extensive injuries to his mouth, and that the City has failed to properly train its officers to search suspects' mouths.  He also claims that officers specifically target African-American suspects in using this type of force, and that previous mayors and members of the city council have been made aware of this tactic but have not taken action.  (MJQ Ans. 1, 5).

Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of respondeat superior.  42 U.S.C. § 1983*; see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  Rather, a municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights.  *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-91 (1978).  The plaintiff must show an "underlying claim of a violation of rights" as well as "a policymaker; an official policy; and a violation of

---

[2]The MJQ specifically advised Plaintiff that DPD is a non-jural entity and asked if he wanted to amend his complaint to add additional defendants.  He chose to add the City but also elected to keep DPD as a defendant.  (MJQ Ans. 1, 5).

4

constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). "Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). For a facially constitutional policy, the plaintiff must demonstrate that the policy was promulgated with deliberate indifference to known or obvious unconstitutional consequences. *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001); *accord Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849-50 (5th Cir. 2009) (discussing failures to train or supervise officers), *cert. den.* 131 S. Ct. 66 (2010).

Here, Plaintiff does not allege specific policies that were officially adopted and promulgated. He claims that the police have engaged in violent oral searches of African-Americans for years, and that violent searches have "caught the attention" of mayors, city council members, and the police chief. In support of his claims, however, he alleges only his June 19, 2010 arrest, from which he apparently infers customary practices of excessive force, racial profiling, and a failure to train. A single incident does not show a policy or custom. *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009). Nor is it sufficient to infer a policy based on a customary practice. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 821 (1985); *see also Bennett*

5

*v. City of Slidell,* 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability.").

Following *Twombly* and *Iqbal*, plaintiffs have the burden to allege facts that show entitlement to relief. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009). Well-pled facts that merely permit an inference of possible misconduct do not show entitlement to relief as required by Rule 8(a)(2). *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (relying on *Iqbal*). Without enough facts to permit the inference of an official custom or policy that resulted in Plaintiff's injuries, his claims against the City necessarily fail. *See McClure v. Biesenbach*, 355 F. App'x 800, 803-04 (5th Cir. 2009) (finding that Plaintiffs must plead facts showing that a policy or custom existed to state a claim and affirming dismissal of municipal liability claims because the complaint alleged insufficient facts).

This conclusion is supported by *Davenport v. City of Garland, Tex.*, No. 3:09-CV-798-B, 2010 WL 1779620, at *2-3 (N.D. Tex. Apr. 9, 2010) (recommending granting motion to dismiss), *accepted by* 2010 WL 1779619 (N.D. Tex. Apr. 30, 2010) (Boyle, J.). Davenport alleged that "the use of excessive force . . . is so common and well known . . . that it constitutes a custom that fairly represents official policy". *See* 2010 WL 1779620 at *2. The Court found that these "conclusions, unsupported by facts, are not entitled to the presumption of truth." *Id.* It further found that alleged failures to train or discipline officers were not supported by facts and were therefore mere conclusions not entitled to the presumption of truth. *Id.* at *3. Because Davenport failed to plead facts that "show similar incidents of excessive force", knowledge or approval by a policymaker of a pattern or practice of excessive force, or a failure to train officers by a final policymaker, he failed

6

to state a plausible claim of municipal liability. *Id.*[3]

In this case, Plaintiff also fails to plead sufficient facts to support his conclusory assertions of official customs or policies of excessive force, racial profiling, and failure to train. Because Plaintiff alleges only one incident to support his inference of official customs or policies, his factual allegations are insufficient to nudge his claims of municipal liability from conceivable to plausible, and his claims against the City should be dismissed.

## C. Police Officers

Plaintiff also sues two DPD officers for using excessive force during his arrest, resulting in injury and long-term medical treatment. (Compl. at 6; MJQ Ans. 2, 8). He claims that they racially profiled him when they stopped and searched him after he legally crossed the street. (MJQ Ans. 4). He also alleges that both officers submitted a false police report about his arrest on June 19, 2010, and that they committed theft by keeping his coins. (MJQ Ans. 9).

### 1. *Official Capacity Claims*

Plaintiff sues the officers in their official capacities. An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's allegations against the officers in their official capacities are essentially claims against their employer, the City. *See Graham*, 473 U.S. at 165. Because the factual basis for Plaintiff's official capacity claims against the officers is the same as that for his claims against the City, his official capacity claims against the officers are

---

[3] Other district courts have likewise dismissed municipal liability claims for lack of factual support. *See Hutchison v. Metro. Gov't of Nashville & Davidson, County*, 685 F. Supp. 2d 747, 751-52 (M.D. Tenn. 2010); *Martin v. District of Columbia*, No. 09-1241(EGS), 2010 WL 2628711, at *3 (D.D.C. July 1, 2010); *Ward v. Nevada*, No. 3:09-CV-00007-RCJ-VPC, 2010 WL 1633461, at *5 (D. Nev. Feb. 26, 2010), *accepted by* 2010 WL 1640427 (D. Nev. Apr. 2010);*Jenkins v. Humboldt County*, No. C 09-5899 PJH, 2010 WL 1267113, at *3 (N.D. Cal. Mar. 29, 2010); *Mabien v. Riley*, No. 08-00728-CG-B, 2009 WL 4609763, at *3 (S.D. Ala. Dec. 1, 2009).

7

duplicative of his claims against the City and should be dismissed for the same reasons. *See Castro Romero v. Becken*, 256 F.3d 349, 255 (5th Cir. 2001) (finding dismissal of claims against officers in their official capacities appropriate when the "allegations duplicate claims against the respective governmental entities themselves").

### 2. *Individual Capacity Claims*

#### a. False Report

Plaintiff contends that the two police officers filed a report containing false statements that he was jaywalking, that he ran from the police, and that he possessed an unknown white substance. (Compl. at 4-5). He claims that the charges filed against him based on this report were dismissed (Compl. at 5, MJQ Ans. 6), but he acknowledges that his parole was revoked on December 1, 2010, based on his June 19, 2010 arrest. (MJQ Ans. 6).

When a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, *Heck v. Humphrey* provides that the complaint must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. 512 U.S. 477, 486-87 (1994). *Heck* applies to both parole and probation revocation. *See Cougle v. County of DeSoto, Miss.*, 303 Fed. App'x. 164 (5th Cir. Nov. 7, 2008, *citing Jackson v. Vannoy*, 49 F.2d 175, 177 (5th Cir. 1995). By claiming that the information contained in the arrest report is false, Plaintiff is challenging the validity of his parole revocation, which was based on this arrest. *See Cougle*, 303 Fed. App'x at *2.

Because *Heck* applies to Plaintiff's false report claim, he must demonstrate that the

revocation of his parole has been reversed, invalidated, or expunged prior to bringing this claim under § 1983. Because he has not done so, his false report claim is not cognizable at this time. The claim is "legally frivolous" within the meaning of 28 U.S.C. § 1915 and should be dismissed "with prejudice to [] being asserted again until the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996); *see also Balisok*, 520 U.S. at 649. *Boyd v. Biggers*, 31 F.3d 279, 283-84 (5th Cir. 1994); *Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994).

### b. Racial Profiling

Plaintiff also alleges that the officers racially profiled him when they stopped and searched him. He states generally that "black crack dealer and users are targeted with the violent method" of searching mouths for drugs, and that black citizens are beaten by white police officers disproportionately compared to white and Hispanic citizens. (MJQ Ans. 4).[4]

A claim of racial profiling asserts a violation of the right under the Fourteenth Amendment to equal protection. *Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that claims asserting that selective enforcement of a law based on race are properly brought under the Equal Protection clause and that the clause may be violated even if police action is acceptable under the Fourth Amendment). To allege an equal protection claim, Plaintiff must allege that he received treatment different from that received by other similarly-situated individuals *and* that the unequal treatment stemmed from a discriminatory or purposeful intent. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985); *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

Here, Plaintiff has made only the conclusory allegation that other individuals who are white

---

[4] Plaintiff's racial profiling claim does not appear to be barred by *Heck* because his claim that the officers used excessive force based on his race does not imply the invalidity of his parole revocation based on his arrest. Because the issues raised in this claim are appropriate for early and final determination, a determination of whether *Heck* bars Plaintiff's claim is not required. *See Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 462 n.6 (5th Cir. 1998).

9

or Hispanic are treated differently by the police and that this treatment is based on a discriminatory intent. He has failed to allege any facts to support his conclusory claim that there have been similarly-situated individuals of other races who have been treated differently when stopped and searched by these police officers. He has also failed to allege any facts to support his conclusory allegation that any alleged unequal treatment resulted from discriminatory intent. He has therefore failed to assert a cognizable equal protection claim. *Kock v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *see also McNight v. Eason*, 227 Fed. App'x 356, *1 (5th Cir. May 4, 2007) (holding that conclusory allegations of racial discrimination cannot support a viable equal protection claim). This claim against the officers should therefore be dismissed.

### c. Theft

Plaintiff also alleges that the officers committed theft because they did not return coins that they seized during his arrest. Whether intentional or negligent, "random and unauthorized" deprivation of property neither violates the Constitution nor states a claim under § 1983 when adequate state post-deprivation remedies are available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Texas law provides adequate state post-deprivation remedies, including a state action for the Texas tort of conversion. *Brewster v. Dretke*, 587 F. 3d 764, 768 (5th Cir. 2009) (citing *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994)). Because Plaintiff has available state post-deprivation remedies, his § 1983 claims based on the alleged theft of his coins by the officers are legally frivolous under *Hudson* and should be dismissed.

### d. Excessive Force

Plaintiff alleges that the officers used excessive force against him during his detention and arrest because they kicked and stomped him, and Buchanan forced a flashlight through his teeth.

(MJQ Ans. 2, 3). His resulting injuries included a broken wrist, chipped teeth, and head injuries, and he required treatment at the hospital. (MJQ Ans. 8).

The Fourth Amendment of the United States Constitution protects individuals from excessive force during an arrest or other seizure. *See Graham v. Conner*, 490 U.S. 386, 395 (1989). To prevail on a claim of excessive force, a plaintiff must demonstrate that the use of force was not "applied in a good-faith effort to maintain or restore discipline", but instead, was used "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Furthermore, the Fifth Circuit has held that an "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *accord Elliot v. Linnell*, 269 Fed. App'x 450, 451 (5th Cir. 2008) (per curiam). Plaintiff has sufficiently alleged facts to support his claim that both officers did not apply the force used against him in a good-faith effort to maintain or restore discipline. His factual allegations reasonably suggest that the officers acted maliciously and sadistically to cause harm, so his allegations of excessive force against them are sufficient to survive the frivolity screening.

### IV. RECOMMENDATION

All claims against all defendants, except for the claim of excessive force against DPD officers Buchanan and Bayton in their individual capacities, should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

**SIGNED this 5th day of June, 2012.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE